1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ALFRED J. ANTONINI,

        NO. CIV. S-04-0505 WBS KJM

    Plaintiff,

  v.                      ORDER RE:MOTION FOR
                              SUMMARY JUDGMENT

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA; THE
PRUDENTIAL WELFARE BENEFITS
PLAN; and THE PRUDENTIAL
RETIREMENT PLAN,

    Defendants.

----oo0oo----

        This is an action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), for review of a decision by defendants ("Prudential") terminating plaintiff's benefits under a long-term disability insurance plan. The matter is before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

        Generally, motions for summary judgment are not the preferred procedure for resolution of ERISA claims. See Kearney v. Standard Ins. Co., 175 F.3d 1084 (9th Cir. 1999).

1

1 Summary judgment is proper only "if the pleadings, depositions,
2 answers to interrogatories, and admissions on file, together with
3 the affidavits, if any, show that there is no genuine issue as to
4 any material fact and that the moving party is entitled to
5 judgment as a matter of law."  Fed. R. Civ. P. 56(c).
6          The ultimate issue here is whether plaintiff is
7 disabled within the meaning of the policy.  There is ample
8 evidence in the administrative record that plaintiff suffers from
9 a large hiatus hernia, as well as esophagal stricture consistent
10 with chronic peptic esophagitis, worsening to the point of being
11 characterized as "severe hemorrhagic esophagitis."  Defendants do
12 not dispute that plaintiff suffers from the medical conditions
13 asserted, but deny that his illness has prevented from performing
14 his duties as District Manager.  There are genuine issues of
15 material fact in the record as to whether plaintiff is wholly
16 prevented from performing any and every duty pertaining to his
17 occupation within the meaning of the policy.
18          Although it is undisputed that plaintiff owned and
19 managed a collection of real estate properties located in
20 California and Texas during the time in question, and that
21 plaintiff spent some time each day managing holdings in Texas and
22 California, plaintiff asserts that he had a secretary who worked
23 30 hours a week for him, and that he had hired full time
24 employees to manage the real estate investments.  Plaintiff also
25 asserts that a majority of his time each day was spent engaged in
26 residential activities at his house.  However, in the 1982
27 report, as well as in other Prudential documents, the claim
28 investigator noted his suspicion that plaintiff was "more active

in his business activities then he was leading [the] investigator to believe."

Moreover, the "Investigative Memorandum," summarizing the findings of Prudential's SIU investigation of plaintiff's disability claim, contains evidence of a level of management and involvement beyond that which plaintiff admitted.  Specifically, the report references documents, consisting of financial statements and expense registers, internal Jarga Management communications, and a Continental Airlines register, indicating that plaintiff traveled between Houston and San Francisco over 110 times in roughly four years, that he claimed on numerous financial statements that he was self-employed in "property management and ownership," and that he had consistently been earning income.  In addition, the report references statements, taken during interviews at the FBI offices in Houston, Texas, of twelve people who were employed by plaintiff for various periods of time between 1987 and 1999.  Overall, the statements indicate that plaintiff was very actively involved with the day-to-day management and operation of his real estate business, including working long hours, making phone calls, writing memos, visiting properties, holding meetings, and hiring and firing employees.

In his November 15, 2001, letter to Prudential, however, plaintiff vehemently disputes the interpretation, reliability, and authenticity of the exhibits referenced in the SIU's memorandum. In particular, plaintiff states that during the period in question he personally received no remuneration, but that Jarga Management, operating at a loss, received the net income from property sales.  In addition, plaintiff notes that

3

1  many of the memoranda reportedly written by him are in fact
2  unsigned, presumably implying that while his name was used, he
3  was not in fact doing the work.  Plaintiff asserts that it was in
4  fact his assistant, Sherrie Taylor, who "ma[de] most of the
5  decisions and perform[ed] the majority of management and
6  supervision of the properties she was involved with."
7  Furthermore, plaintiff attacks the credibility of the statement
8  given by Sherrie Taylor, the FBI's primary witness in its
9  investigation, asserting various financial misdeeds on her part,
10 as well as attempted fabrication of crimes.  Plaintiff
11 additionally accuses the government agents of threats and
12 intimidation in their questioning of his other former employees.
13         It is clear to this court, and indeed the parties do
14 not dispute, that plaintiff played some part in the management
15 and operation of his real estate holdings between 1988 until the
16 present.  It is not clear, however, what the true extent was of
17 plaintiff's day-to-day involvement--plaintiff and defendants
18 continue to dispute this issue.  Nor has it been shown beyond
19 dispute that the activities plaintiff apparently engaged in were
20 sufficiently similar so as to demonstrate that he was capable of
21 performing his job.
22         There is even a dispute as to whether plaintiff should
23 be required to return the benefits he received during the time he
24 was incarcerated.  Plaintiff concedes that he was imprisoned from
25 June 1, 2001, to October 15, 2004, stemming from a guilty plea
26 for "conspiracy to commit wire fraud, mail fraud and bank fraud."
27 Although it seems beyond dispute that this incarceration falls
28 within the exception to the definition of total disability under

1  the LTD Plan "GZ-9600" submitted with this motion, the parties
2  continue to dispute whether the plan in place at all times
3  relevant to this action was the "GZ-9600" plan submitted with
4  this motion, or "Policy G-1690-LTD."
5         The Ninth Circuit has made clear that, even though a
6  subsequent trial on the administrative record might consist of
7  nothing more than "the trial judge rereading what he has already
8  read, and making findings of fact and conclusions of law instead
9  of a summary judgment decision," it may nonetheless have "real
10 significance." Kearney, 175 F.3d at 1095.  Accordingly, summary
11 judgment is not proper at this time.
12        IT IS THEREFORE ORDERED that defendants' motion for
13 summary judgment be, and the same hereby is, DENIED.
14 DATED: December 14, 2006

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE